## 9598

### WHITE *ET AL.* v. ATLANTIC COAST LINE R. CO.

#### (91 S. E. 323.)

RAILROADS—INJURIES AT CROSSING—JURY CASE.—In an action against a railroad for killing two horses and injuring a buggy and a gun in a crossing collision, case *held* for the jury under the evidence.

Before MEMMINGER, J., Monck's Corner, March, 1916. Affirmed.

. Action by J. D. White and C. W. White against the Atlantic Coast Line Railroad Company. From a judgment for plaintiffs, defendant appeals.

*Messrs. Mordecai & Gadsden & Rutledge* and *Octavus Cohen,* for appellant, cite: *As to proximate cause:* 67 S. C. 347; 82 S. C. 45; 83 S. C. 325; 84 S. C. 125; 94 S. C. 143; 78 S. C. 374; Civil Code 1912, sec. 3230.

*Mr. E. J. Dennis,* for respondent, cites: Civil Code, sec. 3222, 3230; 53 S. C. 121; 58 S. C. 73, 222; 83 S. C. 325; 63 S. C. 370.

February 9, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Tort, for the negligent injury to personal property. Defense, the injury resulted from the plaintiffs' contributory negligence. The thing hurt was a buggy and two horses attached; the horses were killed, and the buggy and a gun were demolished. The instrumentality was a rapidly moving freight train. The place was at Gaillard's crossing of the railroad track by a dirt highway, in a deep curve of the track, and just out of a cut. The verdict was for the plaintiffs for $600.

There are three exceptions; but there is only one question, and that is: Was there testimony tending to show such negligence of the defendant that caused the hurt? The third exception makes reference to the rule in Danner's case; but there is no pretense that the rule was applied by the Court below, or that it now has any relevancy to the case.

The circumstances of the accident were these: The plaintiffs were driving a pair of horses hitched to a buggy, and

as the horses walked upon the railroad track at the cross-
ing, the tongue of the buggy dropped down and halted the
horses; one of the plaintiffs jumped out of the buggy to
look after the broken part, and just then and almost imme-
diately the train of cars came upon the team.

The plaintiffs testified there was no signal of the train's
approach, by bell or by whistle; had there been they would
not have driven upon the track. It was late in the night-
time, and the night was dark, and the headlight was aflame.
It is true the train crew testified that the signals were given;
but of the truth of the matter the jury had to judge. If
not given, that of course was negligence.

The real contention of the defendant was that the signals
were not necessary to protect a traveler who knew from
other sources of the train's near approach. That may be
true; but the only testimony tending to prove such knowl-
edge was that of the plaintiffs. They swore that just as
they were on the track they saw the headlight, maybe a
quarter of a mile away.

The plaintiffs further testified the impact took place in a
minute after they were on the track; and the defendant's
witnesses testified the train was running 20 or 25 miles an
hour. There was no testimony that the plaintiffs had notice
of the near approach of the train in sufficient time to have
escaped the collision; and notice could serve no other end
to defeat their right.

The Court was right to send the case to the jury; and the
judgment is affirmed.